**FILED**
2006 Mar-03  PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| ALFRED H. VERNOY, JR. and | ) |
| KATHRYN L. WEBER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 04-PWG-0622-S |
| | ) |
| U. S. INVESTIGATIONS SERVICES, L.P. and | ) |
| TRL LEASING, INC., | ) |
| | ) |
| Defendants. | ) |

<u>MEMORANDUM OF DECISION</u>

On March 25, 2004 plaintiffs Alfred H. Vernoy, Jr. and Kathryn L. Weber initiated this civil action with a complaint filed in the United States District Court for the Northern District of Alabama alleging that defendants TRL, Inc.,[1/] (hereinafter "TRL") and United States Investigation Services, L.P.(hereinafter "USIS") had violated terms and provisions of § 1681, et seq., of the Fair Credit Reporting Act.  (Doc. #1).  The complaint was amended on March 30, 2004 to add a claim of defamation.  (Doc. #3).  At the time the action was filed plaintiffs were represented by attorneys Earl P. Underwood and David R. Donaldson.  On July 29, 2004 the parties consented to the dispositive jurisdiction of the undersigned magistrate judge in accord with 28 U.S.C. § 636(c) and *Federal Rule of Civil Procedure*  73.[2/] The matter is currently before the court for consideration of motions filed by both TRL and USIS for summary disposition under Rule 56, *Federal Rules of Civil Procedure*. (TRL's motion for summary judgment, doc. #35 and evidentiary submission, doc. #37; USIS's

---

[1/]     In the complaint the defendant was identified as TRL Leasing, Inc.  The correct name appears to be TRL, Inc.

[2/]     The matter had initially been assigned to the undersigned pursuant to the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000, and 28 U.S.C. § 636(b) and Rule 72, *Federal Rules of Civil Procedure*. (Docs. #20 and #21).

motion for summary judgment, doc. #38 and evidentiary submission, doc. #40). Plaintiffs then filed a combined response to the motions for summary judgment. (Doc. #51). The motions are ripe for disposition. After consideration of the averments of the complaint, the submissions of the parties and the applicable law the motion of TRL for summary judgment (doc. #35) is due to be GRANTED. The motion of USIS (doc. #38) is due to be GRANTED. The motions are GRANTED for the motions more fully set forth below.

OPERATIVE FACTS[3]

Plaintiffs Alfred H. Vernoy, Jr. and Kathryn L. Webber are a husband and wife driving team and operate large trucks over long haul roads throughout the county. (Doc. #51, p.2). From May 2002 through March 2003 the plaintiffs were employed by TRL of Pittston, Pennsylvania as long haul truckers. *Id*. The parties agree that TRL and its drivers are subject to the Federal Motor Carrier Safety Regulations ("FMCSR") as promulgated by the United States Department of Transportation. (Docs. #35 and #51). Among the requirements of the FMCSR is that drivers and companies are both are compelled maintain records described as "drivers record of duty status." The plaintiffs and TRL agree that within the truck driving industry these records are referred to as "drivers logs."[4] In 2002 and 2003 drivers operating trucks for TRL were required to submit logs to the company on a thirteen (13) day basis. The logs were furnished to TRL in packets. (See doc. #51). The practice of the company was to enter the logs into log scanning system. The parties agree that a confirmation of driving logs in the system is normally a prerequisite to the issuance of compensation checks to

---

[3]    The facts referred to are either undisputed or construed in the light most favorable to the plaintiffs as the non-moving parties.

[4]    TRL asserts and Mr. Vernoy and Ms. Weber do not contend otherwise "... that drivers and employers may be prosecuted for failing to complete drivers logs, failing to preserve drivers logs or falsifying logs." Citing *inter alia*, 49 C.F.R. § 395.8(e) (2005).

drivers.  According to the safety director for TRL, Dan O'Brien, for a period of approximately twenty weeks in 2002 and 2003, TRL experienced a technical problem with its log scanware.  For that period of time drivers logs submitted to the company could not be entered into the system.  Because the drivers logs could not be entered into the system, the accounting department did not verify that the logs had been properly submitted before issuing pay checks to TRL drivers including Alfred Vernoy and Kathryn Weber.  (Doc. #38, exhibit 3A).[5]  After the software/scanware problem was solved in March of 2003, TRL began the process of entering drivers logs for the period that the system had been down while simultaneously entering the logs for the current periods.  An internal audit revealed that TRL did not have logs for Alfred Vernoy and Kathryn Weber from November 1, 2002 through March 12, 2003.[6]  According to O'Brien the thirteen day submission cycle would required TRL to "lose" from at least ten to as many as fifteen different packets in order to explain the missing logs.  Mr. O'Brien averred that during that period of service as safety director the company had never experienced a problem of losing a large number of driver log reports for a single driver or driving team.

The parties agree that on March 21, 2003 Mr. O'Brien met with Mr. Vernoy and Ms. Weber.  The parties also agree that Mr. O'Brien agreed to allow Mr. Vernoy and Ms. Weber to submit logs for the time period using other records TRL had available on site.  It is also undisputed that Mr.

---

[5]      In their response to the motion for summary judgment Mr. Vernoy and Ms. Weber also attach the O'Brien affidavit.  (Doc. #51, exhibit A).

[6]      The plaintiffs maintain that the period of the missing logs was from November 1, 2002 through December 31, 2002.  (Doc. #51, unnumbered p.3; see also plaintiffs' exhibit C to doc. #51).  For the reasons more fully set forth below, the factual dispute, if any, is immaterial

Vernoy and Ms. Weber refused to do so.  Mr. O'Brien construed this refusal as a resignation.[7/] The plaintiffs were then terminated.  On March 27, 2003 TRL reported to USIS that Mr. VErnoy and Ms. Weber had "log violations, violated a company policy and a preventable accident involving Mr. Vernoy which had occurred on March 4, 2003." (Doc. #38, exhibit A3).  According to O'Brien, the violation of company policy was the failure to turn in the logs for the relevant time period.  (O'Brien affidavit, p.12).

Following their termination by TRL plaintiffs submitted a claim for unemployment compensation with the Unemployment Compensation Board of Review for the Commonwealth of Pennsylvania on April 6, 2003.  A hearing was held on July 31, 2003.  The hearing officer characterized the issue as "... whether the claimants' failure to provide drivers logs was wilful misconduct in connection with the claimants' work." (Doc. #38, exhibit 2). (emphasis added).  The hearing officer concluded that the plaintiffs refusal to re-create the log books was reasonable because he was told that plaintiff could not accurately state which of them had been driving during the referenced period at any given time using only the TRL records.  Contrary to the plaintiffs' understanding, the hearing officer did not consider whether they had or had not turned in the log books as required nor did he find them "not guilty" of a log book violation.  Moreover, the hearing

---

[7/]    Mr. Vernoy and Ms. Weber contend that they were asked to "falsify" logs for the relevant period.  (See. doc. #51, unnumbered p.3 at ¶ 9).  According to the plaintiffs they offered to provide copies of the log later in the week.  The plaintiffs maintain that Mr. O'Brien refused to "route [them] to Alabama to retrieve the true and correct copies of the logs."  *Id*. at ¶ 11.  It is not disputed that at no time after March 21 did the plaintiffs produce the logs for the referenced period to TRL or apparently anyone else required to account for them.  The plaintiffs have argued that when they submitted log sheets to TRL they were given new or additional log sheets. They state that because of this process TRL must have had the packets at issue.  At the same time the plaintiffs also state that the completed logs were at their home in Alabama when they met with O'Brien on March 21, 2003 and the reason they did not have the books with them was because O'Brien did not ask them to bring the logs.  It is not clear whether plaintiffs are referring to copies of the logs they claim were submitted to TRL or the originals when they maintain the logs were in Alabama.

officer did not address whether the plaintiffs had violated a company policy by failing to produce the log books the company was required to maintain.  Plaintiffs contend that after termination by TRL they were on occasion subjected to D.O.T. log checks and found in compliance.  That fact, however, has no bearing on whether plaintiffs turned in log books to TRL.  The phrase "log book" violation as used on the TRL DAC information did not refer to the absence logs from plaintiffs' truck but that the plaintiffs had not provided copies to TRL.  As a consequence TRL could not certify to the matters contained in the logs.

As noted above TRL reported to USIS, a consumer reporting agency,  on March 27, 2003 that plaintiffs had (1) failed to turn in logs, (2) violated a TRL policy by failing to do so and (3) that Mr. Vernoy had been involved in a preventable accident in January 2003.  (Doc. #40, Exhibit M).  USIS is in the business of providing "DAC" reports to prospective employees of truck drivers.  The DAC report is created from a database with the employment histories of drivers.[8]  Unlike many other

---

[8]    [I]n 1970 the United States Department of Transportation promulgated the Federal Motor Carrier Safety Regulations ("FMCSR") establishing minimum qualifications for commercial motor vehicle drivers and requiring employers to investigate the driving record and employment history of prospective employees being hired to drive large trucks.  49 C.F.R. § § 390.1-390.37, 391.1-391.69 (2000).  The investigation of an applicant's driving record must include inquiries to "the appropriate agency of every State in which the driver held a motor vehicle operator's license or permit" during the preceding three years.  49 C.F.R. § 391.23(a)(1) (2000).  The investigation of the applicant's employment record for the preceding three years "may consist of personal interviews, telephone interviews, letters, or any other method of obtaining information that the carrier deems appropriate," but the employer must maintain a written record as to each past employer that was contacted.  49 C.F.R. § 391.23(c) (2000).

*Cassara v. DAC Services, Inc.*, 276 F.3d 1210, 1213 (10th Cir. 2002).

As often is the case, the federal regulation of one commercial activity gave birth to another new business opportunity – in this case, the gathering and reporting of drivers' records and employment histories for a fee.  DAC was formed in 1981 to exploit that opportunity, first by building a database of truck driver employment histories.  Beginning in 1983, DAC offered employment histories, employee driving records, and other reports to its trucking industry members nationwide, augmenting its database with information reported by its participating employers.

*Id.* at 1214.

databases which come within the ambit of the FCRA, DAC customers are the only furnishers and only recipients of DAC information. USIS receives information from its customers, including TRL, and reports that data upon request to other DAC customers. The DAC system is essential a "closed" process in which trucking firms provide and receive data concerning prospective employees. Unlike a more general credit database the information is available only to those who are customers and to the drivers themselves. In October of 2003 each plaintiff requested a copy of the DAC report maintained by USIS. (Doc. #40, Exhibit A). USIS responded on the same day. In its reply USIS provided a copy of the employment information provided by previous employees and a Summary of Rights regarding the FCRA. (Doc. #40, Exhibits D & E). The Summary of Rights told the plaintiffs, *inter alia*, that "... at your request, [USIS] must give you the information in your file and a list of everyone who has requested it recently." *Id.* USIS did not include a list of individuals or companies who may have asked for or received the report.[9] The information provided to Mr. Vernoy included his history with Swift Transportation Company from 1997 through March of 2001, J Mar Trucking from March 2001 to November 2001 and TRL from May 2002 to March 2003. Under work record the TRL entry stated "Log Violation" and "Company Policy Violation." The TRL data also referred to a preventable accident in which Mr. Vernoy was involved on March 4, 2003 in Illinois when his truck struck an overhead object. (Doc. #40, Exhibit D). Ms. Webber's information also included the "Log Violation" and "Company Policy Violation" entries. (Doc. #40, Exhibit E).

In January 2004 plaintiffs wrote to USIS disputing the TRL information. (Doc. #40, Exhibits F&G). Both plaintiffs included a copy of the hearing officers' for the Unemployment Compensation

---

[9] USIS asserts that the plaintiffs were required to specifically ask for such a list before it is obligated to provide a response.

Board as "proof" of an inaccuracy contending that the findings of the hearing officer exonerated them of both a log violation and violating company policy. *Id*. Mr. Vernoy also claimed that an overhang had been improperly marked causing the minor accident on March 4, 2003. (Exhibit F). Upon receiving the notice of dispute, USIS immediately notified TRL of the dispute and provided TRL the submissions of the plaintiffs. (Doc. #40, Exhibits J & K). USIS asked TRL to "... check your records to determine if an error has been made in the information." *Id*. The request to TRL clearly stated that "... the Fair Credit Report Act requires a re-investigation of an employment history provided by your company." ( *Id*., emphasis added). Later, TRL confirmed to USIS that Alfred Vernoy had not "turned in [his driving logs] for three months," that he had violated a company policy and that he had been involved in an accident. (Doc. #40, Exhibit L).[10] Ms. Webber's violation of a company policy was not verified and was removed from her file by USIS. (Doc. #40, Exhibit N). Despite receiving TRL's verification of the information USIS removed all the disputed data on April 1, 2004 less than one week after this lawsuit was filed. (Doc. #40, Exhibit A, p.8).

It is significant that USIS's records clearly establish that no DAC report for either plaintiff was requested or released between March 26, 2003 and April 1, 2004. (Doc. #40, Exhibit D, p.8) (See also Exhibits D and Q identified as "true and correct copies of the inquiry list for Mr. Vernoy and Ms. Webber." ) Plaintiffs contend that because they "... phon[ed] potential employees after their dismissal with TRL..." the report of inquiry must be inaccurate. (Doc. #5, unnumbered p.5, ¶ 19).[11]

---

[10] USIS's notes indicate that with regard to the violation of company policy question the handwritten term "refused" is crossed out and the word "insubordination" was written instead. *Id*.

[11] The plaintiffs also observe that other data related to other job history and training was also not reflected in the report. It is not clear that this omission, if any, is relevant to the summary of inquiry issue.

Plaintiffs offer no evidence of any kind, however, that any potential employer ever requested or received a report from USIS containing the disputed TRL information from March 27, 2003 through April 1, 2004.  Plaintiffs do point to a January 20, 2005 DAC request by Gainey Transportation.  It is not disputed that the information the Plaintiffs have challenged had long since been removed when the Gainey inquiry was made.[12]  It is not disputed that only trucking firms would ever reveal DAC from USIS and that there is no evidence that a firm ever obtained the TRL information from a request directed to USIS.

In the amended complaint the plaintiffs allege that TRL failed to comply with 15 U.S.C. § 1661s-2(b) of the Fair Credit Reporting Act by failing to conduct an adequate investigation with regard to the disputed information provided to USIS and failed to promptly investigate and report the outcome of the investigation to USIS allowing the same "misleading and inaccurate information" to remain.  (Count 2).  Count 6 of the amended complaint alleges that both TRL and USIS defamed the plaintiffs by including the TRL information having "... no factual basis for making the statements and, in fact, knew or had reason to know the statements were false.  Defendants knew the statements were false because plaintiffs had notified defendants that they never had log or policy violations and gave defendants copies of the judgment finding plaintiffs innocent log or policy violations."  (Count 6, doc. #3).

---

[12]    The plaintiffs have contended that the Gainey inquiry is "proof" that the USIS records are not accurate. Apparently the plaintiffs contend that the January 20, 2005 Gainey inquiry was not on the list provided to plaintiffs; however, it clearly was included.  Moreover, the evidence is also irrelevant for any other purpose as the challenged information had been removed months earlier.  As noted by TRL, plaintiffs' counsel admitted that after discovery in this action had been completed he and his law firm had been unable to discover any request for the DAC information nor evidence that USIS had ever provided a DAC report to any company or individual other than plaintiffs themselves.

USIS is named as the only defendant in counts (1), (3), (4) and (5).  Plaintiffs aver that USIS "continually added, stored and maintained and disseminated personal and consumer data about the plaintiffs which [was] false, erroneous and misleading without employing procedures to ensure the maximum policy accuracy of the information...."  (Count 1, alleging a violation of 1681e(b) of the Fair Credit Reporting Act).[13]  Plaintiffs aver that USIS violated § 1681g(a) by failing to report inquiries made by prospective companies regarding the possible employment of the plaintiffs. (Count 3).  USIS is alleged to have violated § 1681k of the Act by publically disseminating information "to users of consumer reports, but has failed to ... notify ... plaintiffs, that it has reported the public record information including the names and addresses of persons to whom the information [has been] reported or ... maintain strict procedures to ensure public record information is complete and up-to-date."  (Count 4).  The complaint seeks a "declaratory judgment" declaring the defendants' failure to list inquiries on a the consumer reports and failing to give proper public record notice to plaintiffs.  Plaintiffs appear to seek this relief from USIS and not TRL.  (Count 5).  (Doc. #1).

<u>APPLICABLE LAW</u>

Under Federal Rule of Civil Procedure 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  TRL and USIS as the parties asking for summary judgment bear the initial

---

[13]    The complaint in count 1 alleges that USIS failed to invoke necessary "functions, procedures and programs designed to ensure false data attributable to other consumers would not post on the plaintiffs' consumer report." There is simply no evidence of such "cross posting."  Other specific procedural allegations such as USIS's defective search algorithm appear related more to the class allegations raised in the initial complaint than to any remaining claim of the individual plaintiffs.  That that leads to some confusion with respect to the discrete allegations individual claims.

responsibility of informing the court of the basis for their motions and identifying those portions of the pleading or filing which believes demonstrates the absence of a genuine issue of material fact. See *id*. at 323, 106 S.Ct. 2548.  Once either or both of these parties has satisfied that burden, Rule 56(e) requires Mr. Vernoy and Ms. Webber to go beyond the pleadings and by their own affidavits, or the depositions, answers to interrogatories, admissions on file designate specific facts which demonstrate that there is a genuine issue for trial.  See *id*. at 324, 106 S.Ct. 2548.

The substantive law will identify which facts are material and which facts are, though disputed, irrelevant to the matter at hand.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   All reasonable doubts concerning the facts and all justifiable inferences must be resolved in favor of Mr. Vernoy and Ms. Webber.  See *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See *id* at 249, 106 S.Ct. 2505.

It is significant that at the time the amended complaint was filed in the Northern District of Alabama, Mr. Vernoy and Ms. Webber were represented by experienced, competent counsel.  The complaint identifies a number of class action allegations. In late February, after the close of discovery but prior to the dispositive motion deadline, defendants USIS and TRL filed motions to enforce a settlement agreement reached between the defendants and plaintiffs' counsel.  (Doc. #27). A hearing was scheduled for April 5, 2005 and continue to April 25, 2005 when Mr. Vernoy failed to appear.  On April 5 plaintiffs Vernoy and Webber filed a motion for leave to proceed *pro se* in which they stated that they had "fired" their lawyers.  (Doc. #29).  On April 25 the attorneys for Mr.

10

Vernoy and Ms. Webber filed motions to withdraw. (Doc. #33). At a hearing held on April 25 the court considered the motion to enforce the settlement agreement as well as the plaintiffs' motion to proceed *pro se* and their attorney's motion to withdraw. During the April 25 hearing the court explained, *inter alia*, the requirements of Rule 56 and the rapidly approaching dispositive motion deadline. Upon the motion of the defendants, the summary judgment motion deadline was extended through May 15, 2005. On May 17 the court granted the plaintiffs' motion to proceed *pro se* and denied the motion to enforce the settlement agreement. (Doc. #41). That order specifically reminded the plaintiffs again that they were directed to file a response to the Rule 56 motion of each defendant not later than June 21, 2005 and that the reply must conform to the requirements of Rule 56 as well as the standard dispositive motion order which was attached. *Id*. Plaintiffs filed a motion for an extension of time in which to obtain new counsel requesting only through June 17, 2005. On June 22 the court granted the plaintiffs' *pro se* motion for extension of time in which to respond to the summary judgment motion. (Doc. 50). The plaintiffs' reply was received in July. (Doc. #51).

On  on November 14, 2005 the court *sua sponte* observed that despite the plaintiffs' request for time to obtain new counsel, more than five months had passed without a notice of appearance and informed the parties that the summary judgment motions were properly before the court.[14]

When a lawsuit is initially brought by a *pro se* plaintiff it is clear that the complaint should be analyzed under a less stringent standard than that submitted by an attorney and should be construed as alleging all fairly and reasonably inferred claims. See e.g., *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66

---

[14]     The court also granted the motion to strike the class allegation on grounds that a *pro se* plaintiff may not presume to represent class members as explained to the plaintiffs in the May 15, 2005 order. (See doc. #41).

L.Ed.2d 163 (1980) (*Pro se* plaintiff should not be held to "strict accountability of compliance with the Rules of Procedure.").  When a *pro se* plaintiff fails to provide relevant citations to any record evidence supporting the factual statements found in those responses, the court may deem each of the movant's statement of undisputed material facts as admitted.  *Digioia v. H. Koch & Sons, Division of Wickes Manf. Co.*, 944 F.2d 809, 811 n.6 (11th Cir. 1991) (per curium).  It is also true, however, that even if a *pro se* plaintiff completely defaults on the obligation to file a brief responding to the motion for summary judgment, a court may not simply enter summary judgment but must consider the merits of the motion.  See *United States v. 5800 S.W. 74th Ave.,* 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.") This is so because Federal Rule of Civil Procedure 56(e) provides that, where "'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.'" *Id.* (alteration in original) (quoting Federal Rule of Civil Procedure 56(e)).  The court defined "appropriate" as a situation where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*, quoting Federal Rule of Civil Procedure 56(c).  See also *TRS. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv., Inc.,*, 374 F.3d 1035, 1039 (11th Cir. 2004).  While a court is required to show leniency to *pro se* litigants not enjoyed by counseled litigants, the leniency does not permit the court to serve as a *de facto* counsel for the party or overlook deficiencies in their filings.  *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).  In addition, although the courts will liberally construe *pro se* pleadings, *pro se* litigants are nonetheless required to so conform to

procedural rules.  See *Wayne v. Jarbis*, 197 F.3d 1098, 1104 (11th Cir. 1999); see also *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedure and substantive law.")

An unwaivable requirement of Rule 56 is that affidavits be "made on personal knowledge" and also requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavits shall be attached thereto...."  (emphasis added).   While a court may under certain circumstances consider the written submissions of the plaintiffs as their affidavits it may not consider other aspects of their response unless the evidence is consistent with the requirements of Rule 56.  Generally, courts ruling on Rule 56 motions may consider only admissible evidence.  See *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) ("In considering a summary judgment motion a court may consider evidence that is admissible or that could be presented in an admissible form.") (citations omitted); *Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.")  "Documents must generally be properly authenticated to be considered at summary judgment, unless it is apparent that those documents can be reduced to admissible, authenticated form at trial."  *United States v. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F.Supp.2d 1322, 1327 n.2 (S.D.Ala. 2003).  Accordingly, plaintiffs' decision to fire their lawyers and proceed *pro se* does not relieve them of the obligation to adhere to the requirements of Rule 56.  Once a *pro se* litigant is in court, "he is subject to the relevant laws and rules of the court, including the Federal Rules of Civil Procedure."  *Moon v. Newsom,* 863 F.2d 835, 837 (11th Cir. 1989).

The Fair Credit Report Act(FCRA)

There are essentially three types of actors which interplay in suits under the FCRA, namely (1) consumer reporting agencies, (2) users of consumer reports and (3) the furnishers of information to consumer reporting agencies.  For present purposes, TRL is the furnisher of information and USIS is the consumer reporting agency.[15/]  The purpose of the FCRA is to assure consumers that reporting agencies use reasonable procedures for collecting, using, and disseminating information.  15 U.S.C. § 1681(b).  *Heupel v. Trans Union, LLC*, 193 F.Supp.2d 1234, 1235 (N.D. Ala. 2002).  Sections 1681(n) and 1681(o) provide private rights of action for wilful and negligent non-compliance with any duty imposed by the FCRA and allow for the recovery of actual damages and attorneys fees and costs as well as punitive damages in the case of a wilful non-compliance.  See *Yelder v. Credit Bureau of Montgomery, LLC*., 131 F.Supp.2d 1275, 1280 (M.D. Ala. 2001).   The plaintiffs specifically allege that TRL violated the conditions of § 1681s-2(b) by failing to conduct an adequate investigation after receiving notice of the dispute from plaintiffs and USIS.  Plaintiffs contend that TRL failed to review information provided by the consumer for and failed to promptly investigate or report the investigation to the consumer reporting agencies.

As a threshold matter TRL contends that § 1681s-2(b) will not sustain a private cause of action citing *Carney v. Experium Information Solutions, Inc.*, 57 F.Supp.2d 496, 502 (W.D. Tenn. 1999).  TRL candidly concedes that *Carney* represents a minority view and that the Eleventh Circuit Court of Appeals has not addressed the *Carney* court's conclusion that the statute created only an obligation of the furnisher of information to the consumer reporting agency and not the consumer

---

[15/]   Other trucking companies if any would be the users of consumer reports.  Indeed, under the DAC matrix, TRL would ultimately be a furnisher and a user depending on the circumstances.

directly thereby precluding a private claim.  While the issue is far from settled, the majority of the

courts that have considered the issue have concluded there is a private cause of action under § 1681s-

2(b) in part because there is simply no statutory ban on such a claim.  *Gibbs v. SLM Corp.*, 336

F.Supp.2d 1, 11 (D.C. Mass. 2004); see also *Downs v. Clayton Homes, Inc.*, 2004 W.L. 253363 (6th

Cir. 2004) (Court assumed for purposes of motion that a private right of action existed under

subsection (b)(1)); *Young v. Equifax Credit Information Servs., Inc.*, 294 F.3d 631, 629 (5th Cir.

2002)(Without deciding the issue, the court noted that § 1681s(b) "appears" to impose civil liability,

permitting a private right of action.); *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057,

1060 (9th Cir. 2002) (Concluding that based on the language of the statute and legislative history, a

private cause of action exists under subsection (b)).  As observed in *Gibbs* there is no unanimity on

the question, however, in the absence of controlling authority the court concludes that the plaintiffs

can articulate a cause of action under the cited statute.

Claims Against TRL

    (a)    Count 2 (FCRA Claim)

    First, it must be recognized that the plaintiffs' claim does not actually relate to information

as initially provided to USIS but refers only to the nature of TRL's response to the notice from USIS

that the plaintiffs had contested certain information.  It is undisputed that TRL immediately reviewed

the information provided by USIS and searched its offices, log files and interviewed its employees.

(See O'Brien's affidavit.)  TRL confirmed that it did not have a record of the plaintiffs logs from

November 2002 through March of 2003.[16/]  USIS documents clearly establish that TRL was

---

[16/]    Indeed, the plaintiffs have never contended that they gave TRL the log books during or after the meeting with
O'Brien.  While they have asserted that TRL should have had the log books, there is no proof that TRL, in fact,
had them.

responsive to the inquiry and performed the required re-investigation upon receipt of notice from USIS. The allegations in the complaint unequivocally contend that TRL "intentionally and willfully failed to perform an investigation." There is no evidence to sustain this claim. Even if the plaintiffs' claim were predicated upon a negligent act upon the part of TRL, the plaintiffs' own evidence demonstrates their investigation was reasonable. (See submission attachment to Doc. #51, including the O'Brien affidavit). The gravamen of the plaintiffs' contention that there "was no log book violation or violation of company policy" is predicated upon their interpretation of the finding of the Pennsylvania unemployment compensation hearing officer. Plaintiffs have misconstrued both the actual finding and the effect of the finding. As noted above the question addressed by the hearing officer was whether for unemployment compensation purposes, the plaintiffs' failure to reconstruct their log books at O'Brien's direction was an act of wilful misconduct in connection with their work. Based on information provided to the hearing officer by plaintiffs the hearing officer concluded that because the plaintiffs had "good reason" for refusing to reconstruct the logs, they were entitled to unemployment compensation benefits. The hearing officer did not find nor did he consider whether the failure to provide log book records to TRL was a violation of a company policy or of the log book record requirements of both TRL and the plaintiffs. He did not, indeed could not, find that there was no log book violations.[17]

The duty of TRL was to consider the information provided by USIS received from plaintiffs. There is no evidence in the record that TRL failed to do so or was unreasonable in its re-

---

[17]   The question of a violation of a company policy has two components. First, the company policy that drivers turn in log books. The second is O'Brien's conclusion that the plaintiffs were insubordinate in refusing to reconstruct the log books. There is no evidence that insubordination was or was not the reason plaintiffs were said to have violated a company policy.

investigation.  While the plaintiffs may dispute the effect of the hearing officer's findings, TRL's conclusion that the finding was irrelevant to the company's report is reasonable.[18]

Section 1681e(b) as written is aimed at the credit reporting agency, rather than the furnisher of information.  The substantive law, however, must be equally applicable if a private cause of action can be maintained against the TRL as the furnisher.  "... [A] consumer must present evidence tending to show that the credit reporting agency prepared a report containing 'inaccurate' information." *Cahlin v. General Motors Acceptance Corporation* 936 F.2d 1151, 1156 (11th Cir. 1991).  The FRCA does not make reporting agencies strictly liable for all inaccuracies. *Id.*  While a jury question may arise if the issue is whether the information is inaccurate in light of the consumer's dispute.  Here, however, the plaintiffs never provided the log books to TRL when they were told the company did not have a record of the logs and never recreated the log books as directed.  The finding of the hearing officer was considered by TRL, the records rechecked and the conclusion as reported to USIS was that the plaintiffs had not turned in the logs based on that search.  The hearing officer's findings did not warrant any other conclusion.

Also of critical importance to the claims against TRL as well as those subsequently made against USIS is the fact that the allegedly false information was never disseminated to anyone.  While the plaintiffs have suggested that the record of inquiries USIS was statutorily required to maintain, is somehow wrong, there is simply no evidence in the record to sustain the conclusory allegation.  That is of great moment in assessing the plaintiffs' claims.  A plaintiff must demonstrate that he or she suffered an injury which was caused by the inclusion of the inaccurate entry. *Cahlin v. General Motors Acceptance Corporation*, 936 F.2d 1151, 1154-55 (11th Cir. 1991).  Because the

---

[18]    Mr. Vernoy did not allege in his complaint an issue related to the allegations of a preventable accident.

plaintiffs have not demonstrated that the information was provided to any other potential employer there are no damages which flow from the alleged failure to adequately investigate the plaintiffs' evidence of dispute.

The Fair Credit Reporting Act claim against TRL under 15 U.S.C. § 1681s-2(b) cannot be maintained as a matter of law and summary judgment is due to be GRANTED

in favor of TRL as to count two.  (Doc. #35).

      (b)     <u>Count 6 (Defamation)</u>

Plaintiffs' defamation claim arguably includes both TRL and USIS.  (Doc. #3, count 6). Plaintiffs maintain that "defendants willfully and/or maliciously published false and defamatory statements about plaintiff both orally and in writing."  *Id*.  The plaintiffs maintain that "defendants knew the statements were false because plaintiffs notified defendants that they never had log or policy violations and gave defendants copies of the judgment finding plaintiffs innocent of any log or policy violations."  *Id*.  Plaintiffs aver that the defendants "...continu[ed ] to ignore plaintiffs' repeated requests that they remove the erroneous information from plaintiffs' consumer reports when they knew the information was false."  *Id*.  The factual averments of the plaintiffs' complaint are that TRL and USIS "continued" to publish false information after having been placed on notice that the information was false.  The complaint does not allege that TRL defamed plaintiffs by providing the information to USIS in March of 2003.  The complaint alleges that the defamation occurred, if any all, after the plaintiffs submission of their objections in February 2004.

Defendants contend *inter alia* that the plaintiffs' complaint fails to state a claim for defamation because 15 U.S.C. § 1681t(b)(1)(F) included in the 1996 amendment to the FCRA preempts all state law causes of action against furnishers of credit information.  Additionally both

defendants assert that 15 U.S.C. § 1681h(e) preempts state law claims of defamation "except as to false information furnished with malice or wilful intent to injure such consumer," and that the plaintiffs' allegations did not meet this heightened standard.  Section 1681h(e) provides in pertinent part that "... no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the report of information against ... any person who furnishes information to a consumer reporting agency, ... except as to false information furnished with malice or wilful intent to injure such consumer."  As part of the 1996 amendments, Congress added § 1681t which provides in pertinent part as follows:

> (b)     General Exceptions.  No requirement or prohibition may be imposed under the laws of any state–(1) with respect to any subject matter regulated under –
>
> * * * *
>
> (F)     Section 1681s-2 of this Title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply –
>
> > (i)     with respect to § 54A(a) of Chapter 93 of the Massachusetts Annotated Laws ...; or
> >
> > (ii)     with respect to § 1785.25(a) of the California Civil Code....

15 U.S.C. § 1681t.

This newer language provides limits on state law liability that is arguably both broader and more narrow than the older § 1681h(e) language.  The newer 1681t(b)(1)(F) is broader than the older 1681h(e) in that it preempts all state law claims that may arise from a person's furnishing of credit information to the consumer report agency, whereas the 1681(h)(e) only preempts state law claims

"in the nature of defamation, invasion of privacy, or negligence" to the extent that such claims do not result wilful or malicious conduct.

Section 1681t(b)(1)(F) is more narrowly drawn, however, in that the preemption is not triggered until after a furnisher of information is notified by a consumer reporting agency of a consumer's dispute ... whereas the older 1681h(e) preemptions are available at all times.[19] The discrete factual averments of the present action relate to the "continued" publication allegedly after the defendants had reason to know that the statements were false. Clearly, as a matter of fact, the allegations of defamation come after the notice of allegedly inaccurate information to USIS by plaintiffs and after TRL received notice of that dispute from USIS. The plaintiffs' defamation claim is preempted as a matter of law.

Moreover as the defendants have observed the plaintiffs' response with respect to the motion for summary judgment does not address the legal or factual averments of the Rule 56 motions with respect to the defamation claim. The issue is deemed abandoned. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000). This is of particular significance with respect to the claim against TRL because TRL has persuasively argued that the applicable law of defamation in the present action is that of the Commonwealth of Pennsylvania. Pennsylvania law recognizes a conditional privilege which would preclude liability even if the plaintiffs' claims were not preempted as a matter of federal law. Pennsylvania law also requires the plaintiffs to prove actual damages in support of a slander or defamation claim. The general nature

---

[19] There has been some disagreement among court on how best to harmonize the application of the two statutes. See e.g. *Woltersdorf v. Pentagon Federal Credit Union*, 320 F.Supp.2d 1222 (N.D. Ala. 2004)*; McCloud v. Home Side Lending*, 309 F.Supp.2d 1335 (N.D. Ala. 2004);*Riley v. GMAC*, 226 F.Supp.2d 1316, 1324 (S.D.Ala. 2002).

of the information provided to USIS appears to fall within the general ambit of Pennsylvania's conditional privilege and the burden rests with the plaintiffs to demonstrate that the privilege was otherwise inapplicable.  As the plaintiffs have failed to respond to this issue, TRL, as the defamation defendant is entitled to summary judgment.[20]  Both TRL and USIS are entitled to summary judgment with respect to Count 6 of the complaint.  (See doc.#35 and 38).

THE CLAIMS AGAINST USIS

Count 1 (Section 1681e(b))

Plaintiffs allege that USIS violated § 1681e(b) by "... issu[ing], assembl[ing], transfer[ring], and publish[ing] 'consumer reports' regarding plaintiffs ..." [and] "... continually adding, stored, maintained, and disseminated personal and consumer data about the plaintiffs which [was] false, erroneous and misleading without employing proper procedures to ensure the maximum possible accuracy of the information...."  (Doc. #1, p.6, ¶¶ 30-31).  Plaintiffs maintain that USIS "knew from its own records that plaintiffs had never had log violations.

In order to sustain a cause of action under § 1681e(b) a plaintiff must "...demonstrate that (1) inaccurate information was included in their credit report, (2) the inaccuracy was the result of USIS's failure to follow reasonable procedures to assure maximum possible accuracy ... (3) they suffered an injury, and (4) their injury was caused by the inclusion of the inaccurate information."  *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996), referring *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d at 1160.  As a factual matter the plaintiffs have not established evidence

---

[20]    This is of some significant in that the allegations of the complaint include a claim of malicious intent.  While the plaintiffs have offered no evidence in support of the contention that TRL was in fact malicious the defendants' position on the substantive law of Pennsylvania forecloses any additional inquiry in light of the plaintiffs' failure to reply.

that "inaccurate information" was included in their credit file.  USIS conducted a computer review

of the initial information supplied by TRL.  Once the plaintiffs notified USIS in February, 2004, of

their response to the TRL information and tendered rebuttal information USIS immediately directed

TRL to adhere to the requirements of the FCRA and conduct a re-investigation.  There is no evidence

that the information reported by TRL was inaccurate in the sense that the challenge offered by the

plaintiffs consisted principally of the submission of the findings of the hearing officer which were

largely irrelevant to the initial submission.  In any case, it is undisputed that USIS included the

plaintiffs' rebuttal as part of plaintiffs' file, directed TRL to perform a re-investigation, deleted

unverified information and ultimately deleted all information related to TRL's employment in April

2004.[21] The second aspect of the first element of a claim under 1681e(b) is that the information was

included in a "credit report."  It is undisputed that the only report of the information contained in the

plaintiffs' files during the relevant period of time was made to the plaintiffs themselves.  In short,

no inquiring party received a copy of a "credit report" containing the allegedly inaccurate

information.  *Renninger v. Chex Systems*, 198 W.L. 295497 (N.D. Illinois 1998); *Hyde v. Hibernia

National Bank*, 861 F.2d 446, 449 (5th Cir. 1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3199, 105

L.Ed.2d 706 (1989).  For that reason plaintiffs cannot demonstrate that they suffered an injury or that

the injury was caused by the inclusion of the accurate information in a "credit report."  *Cahlin v.

General Motors Acceptance Corp.*, 936 F.2d 1160-61 (As plaintiff did not produce any evidence to

show he was injured as a result of the allegedly inaccurate credit report, the court did not reach the

---

[21]    While the removal of the information after the filing of the lawsuit is generally irrelevant to the question of
liability, it is important in this case because there is no evidence that the information provided by TRL ever
became part of a "consumer report" from March 2003 through April 2004.  The possibility of a disclosure after
April 2004 is foreclosed by the removal of all TRL information.

substance of the plaintiff's claims.)  See also *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (Must have a causal relationship between the violation of the statute and the denial of credit aware for actual damages); *Philbin v. Trans Union Corp.*, 101 F.3d at 963.  As with most tort actions an FCRA plaintiff must produce sufficient evidence from which a reasonable trier of fact could infer that the accurate entry was a "substantial factor" in a resulting injury.  *Restatement (second) of Torts* § 431(a).  ("The statute does not allow suit against the credit agency for creating, or possessing, or revealing to a consumer credit files containing erroneous information.")  The FCRA is intended to prohibit the improper disclosure of information it does not envision the mere risk of an improper disclosure.  *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 267 (5th Cir. 2000).  The plaintiffs have failed to demonstrate that the information supplied by TRL was "inaccurate."  Plaintiffs have further failed to demonstrate that USIS was unreasonable in pursing the re-investigation of the rebuttal information offered.  Finally, plaintiffs have failed to demonstrate that they were in any way harmed by the inclusion of the disputed information, whether or not the information in the file was accurate, because that information was never disclosed to an inquiring party in a report.

Count 3 (Section 1681g(a))

Plaintiffs maintain that they "noticed no inquiries made by perspective companies regarding possible employment on the report." (Doc. #1, p.9, ¶ 46).  In the initial complaint plaintiffs asserted that they were "in contact with several trucking companies in search of employment from the date of their termination from TRL until January of 2004 that have used their consumer reports for employment purposes." (*Id*., ¶ 47).  Plaintiffs contend that USIS "... intentionally and/or wilfully [   ] failed to place or list any inquiries of users of the plaintiffs' consumer reports on the plaintiffs'

23

consumer reports as required .... [by] the [FCRA]." (*Id.*, ¶ 49).  The parties have skewed the averments of count 3 by injecting the question of whether USIS provided plaintiffs with a list of those parties inquiring about the plaintiffs at the time the plaintiffs made their request for a copy of "their file" in October of 2003.  The complaint does not appear to raise a question with respect to USIS's obligation, if any, to provide to the plaintiffs a copy of the list of inquirers.  Assuming that such an issue is before the court USIS is correct in its assertion that the obligation to provide to the plaintiffs themselves with a list of those inquiring arises only upon the appropriate request.  USIS is also correct in its assertion that the act anticipates the possibility or even likelihood of multiple inquiries on the part of consumers.  Section 1681g(a)(B)(ii) requires the consumer to specifically request the address and telephone number of the person making an inquiry or receiving a copy of the credit report.  USIS contends and plaintiffs did not dispute that the plaintiffs never asked for a copy of those making inquiry.  Accordingly, to the extent that there is a claim that USIS failed to provide a list of inquiring parties, the claim fails in that plaintiffs never requested such a list.  See *Edgar v. Reich*, 881 F.Supp. 83, 86 (D.C. Mass. 1995), cited by USIS at p.16.

The substantive allegation of count 3 appears, however, to be that the plaintiffs contend that USIS did receive inquiries between April 1, 2003 and April 1, 2004 and intentionally or wilfully failed to list the identities of those inquiring companies.  This allegation is predicated upon the plaintiffs' averment that they "telephoned" a number of trucking companies, apparently during the period they were receiving unemployment compensation from the Commonwealth of Pennsylvania, concerning future employment.  The plaintiffs and USIS have both submitted copies of the list of inquiries made under the social security number of the plaintiffs. The authenticated documents clearly established that TRL was the only company making an inquiry and further that only the

plaintiffs inquired during the relevant period of time.  While the plaintiffs contend that this should not be so, there is simply no evidence that it is not.  Moreover, plaintiffs' counsel expressly acknowledged that after full discovery they could find no indication of an inquiry by any trucking firm or, indeed, any one else with respect to the information contained in the file at USIS.  It is hornbook law that a plaintiff may not rest upon the assertions of the complaint but, rather, must come forward with evidence admissible in some form to prove that there is a material issue of fact.  But for plaintiffs' conclusory allegations there is simply no such evidence.[22]  There is simply no material issue of fact with regard to the allegations of count 4 and USIS is entitled summary judgment.  (See doc. #38).

Count 4 – Section 1681k

The defendants contend that USIS "... has reported public record information regarding the consumers about whom it maintains information, including the plaintiffs, to users of consumer reports, but has failed to either (a) notify those consumers, including plaintiffs, that it had reported that public record information including the names and address of the person(s) to whom the information is being reported or (b) maintain strict procedures to ensure that the public record information is complete and up-to-date." (Doc. #1, p.10, ¶ 53). (emphasis added).  The term "public record information" is a term of art and refers to matters of public record including records of arrest, bankruptcy, land title and court actions among other things.  See *Lewis v. Ohio Professional Electronic, Network LLC*, 190 F.Supp.2d 1049 (S.D. Ohio 2002).  Section 1681k is intended to ensure that those companies assembling and reporting information derived from these public sources

---

[22]    The court also observes that the plaintiffs have never identified any of the companies they purportedly "telephoned" during the relevant time period.

is accurate.  If a potential employer employs assistance of third parties to obtain information from government registries for example, it is required to abide by 15 U.S.C. § 1681k.  There is simply no record of "public information of the type within the ambit of 1681k that was in the file and no evidence that such information, if any, was inaccurate.  Plaintiffs' authority with respect to this claim is inapposite.  Plaintiffs assert that the defendant USIS is in the "same position as public sellers of goods..." citing *Fischl v. General Motors Acceptance Corporation*, 709 F.2d 143 (5th Cir. 1983).  There is no "public information" to be evaluated within the meaning of the statute.  See *Poore v. Sterling Testing Systems, Inc.*, ____ F. Supp. _____, 2006 W.L. 149015 (E.D. Ky. 2006).  The plaintiffs' argument appears to be related to a claim that USIS has a public function as opposed to merely a private function.[23]   Whether USIS operates in public is irrelevant to the question of whether USIS has disclosed "public information" as relevant to 1681k.  USIS in its reply to the plaintiffs' complaint merely stated that the sources of its information were private rather than from "public records."  As a matter of law the plaintiffs cannot maintain a claim pursuant to § 1681k and USIS is entitled to summary disposition of count 4.

Count 5 (The Declaratory Judgment)

In general the FCRA is intended to provide compensation for violations but does not empower private individuals to obtain injunctive or declaratory relief.  In the present case the matters sought to be declared are more closely aligned with the factual averments of the complaint than to a prayer for injunctive relief.  The civil liabilities provision of the FCRA does not expressly authorize injunctive relief.  Moreover, the provisions of Rule 57 of the *Federal Rules of Civil*

---

[23]   It is true that that issue was raised with respect to the universe of potential inquirers related to other claims but is immaterial here.

*Procedure* and the Declaratory Judgment Act would not provide an independent basis for injunctive relief.  See e.g. *In re Trans Union Corporation Privacy Litigation*, 211 F.R.D. 328 (N.D. Illinois 2002).  As a matter of law USIS is entitled to summary judgment on Count 5.

After consideration of the complaint, the motions for summary judgment and evidentiary exhibits, the plaintiffs' response to the motions for summary judgment and evidentiary submissions the court finds that there is no material issue of fact to be resolved by a fact finder and TRL and USIS are entitled to summary disposition of all claims.  Accordingly, TRL's motion for summary judgment (doc. #35) is due to be GRANTED as to counts 2, 6, and to the extent applicable count 5. The motion of USIS for summary disposition (doc. #38) of counts 1, 3, 4 and 5 is due to be GRANTED.  A separate judgment in consistent with this Memorandum of Decision will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 3rd day of March, 2006.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE